In the Matter of the Guardianship of GLADYS HILLMAN HOJACKNI, Lately a Minor.

Surrogate's Court, Oneida County, June 10, 1938.

*Stanley Bliss*, for the guardian.

*G. Edward LaGatta*, for the ward.

RINGROSE, S.   In this proceeding objections were filed to the final account of Horace E. Burdick, as general guardian of Gladys Hojackni, *née* Hillman, now of age, who commenced this proceeding by an application to this court to compel the guardian to account.

The guardian is in an unfortunate position, due wholly or partially, at least, to his own carelessness, although unintentional on his part, except as intent may be inferred from lack of diligence and care.

It appears that Gladys Hillman was the beneficiary of a legacy in the sum of $500 under the will of S. Edgar Burdick, her grand-

father. This legacy was payable at the termination of a preceding life estate to her grandmother, the wife of the testator. This will was admitted to probate by a decree of this court, entered on October 31, 1921, and letters testamentary issued to the guardian in this proceeding, who was the named executor and one of the two residuary legatees. He is also a son of the testator and a paternal uncle of his ward. Subsequent to the termination of the life estate, and on February 24, 1929, Burdick filed with this court his account as executor of the estate of S. Edgar Burdick, together with his verified petition, praying that the same be judicially settled. Gladys Hillman, then a minor, was made a party to the accounting proceeding and represented therein by a special guardian duly appointed by this court.

Upon his account and decree filed in this proceeding, Burdick charged himself with the sum of $6,002.32 in cash, and credited himself with payments of $2,874.54. No objections to the account were filed. By the decree of judicial settlement entered thereon, he was allowed by the court $180.05 for commissions and disbursements, and from the balance remaining in the amount of $2,947.73 was directed by the decree to pay to himself as general guardian for Gladys Hillman the sum of $500. He was appointed general guardian on February 7, 1929. The decree settling this estate was entered on the same day.

The special guardian appointed for the minor in the accounting proceeding filed his report, wherein he made this recommendation: " Before the infant can secure her legacy, a general guardian must be appointed, unless the money amounting to $500.00 is paid into Court. I pass the papers and consent that a decree of settlement be made along the lines indicated in the account."

On the trial of the issues, the guardian testified that in 1926, as executor of the will of S. Edgar Burdick, he invested $1,400 of the funds of the estate then in his hands in first mortgage six and one-half per cent gold bonds of the 351–359 West 42nd Street Company, Incorporated, in denominations of two $500 bonds and four $100 bonds; that these bonds were unsold at the time of the accounting in the S. Edgar Burdick estate, and that he retained one of the $500 bonds in satisfaction of his ward's legacy, although it appears that there was sufficient cash in the estate in addition to the bonds to pay this legacy in full.

Under the circumstances here found to exist, the first question naturally presented is the legal force and effect of the decree on the accounting proceeding in the S. Edgar Burdick estate on the rights and remedies of the parties to the instant proceeding.

To permit the payment to an infant of a legacy by the transfer of securities in lieu of cash, the procedure and requirements necessary to be followed are specifically regulated by statute. (Surr. Ct. Act, § 268.)

What direction or order might have been made by the court, had the entire facts been disclosed and the proper application made, is problematical, and one with which we are not here concerned.

In *Villard* v. *Villard* (219 N. Y. 482, 500) the court said: " A legacy or other payment pursuant to a direction in a will is ordinarily payable in cash, but it does not prevent any other form of payment which is acceptable to the payee." In the instant case no consent recognizable by law was given. The recipient of the legacy was an infant. Neither the special guardian nor the court was informed of the proposed mode of payment.

On the basis of the related facts, the decree of judicial settlement entered in the S. Edgar Burdick estate is conclusive and binding on the general guardian, and he is charged on the date of its entry with the sum of $500 in cash. (Surr. Ct. Act, § 274.)

We now come to a consideration of the guardian's liability had he invested the funds of the infant in the security now held by him subsequent to his appointment.

It appears that at the time of the purchase of these securities in 1926, the general guardian, then as executor, consulted his banker and that at the time was advised that the same were legal for the investment of trust funds. There is no evidence as to whether these securities were still recommended as legal investments for trust funds in February, 1929. It does, however, appear that on January 11, 1929, previous to the date of the appointment of the general guardian, the bid price of these securities was ninety-two dollars and on June 7, 1929, less than six months thereafter, the bid price was seventy dollars. These were the only quotations that were obtainable. At the time of this accounting, this security was apparently worthless, or at least there is no evidence of any value. Nor does it appear that any attempt was ever made by the general guardian to dispose of this bond, even after the discontinuance of the interest payments in January, 1932. At the date that the guardian accepted or retained this bond in lieu of cash in satisfaction of the infant's legacy, he was chargeable with the same degree of care and prudence in investigating its standing and value, as when he made the original investment as executor of the estate. This he wholly neglected to do, although a reasonable investigation would have revealed the unsoundness of such an investment.

While a general guardian is not a guarantor of the safety of his ward's funds, he is chargeable with the same degree of care and

prudence as is exercised by the individual of ordinary intelligence in the conduct of his own affairs. (*Delafield* v. *Barret*, 270 N. Y. 43, 48; *Matter of Jacobs*, 152 Misc. 139; *Matter of Flint*, 148 id. 474.)

On the trial of these objections, the guardian proceeded upon the theory that the burden was upon the objecting party to show that the loss was occasioned by the guardian's neglect or carelessness. This is not the rule. To avoid a surcharge for a loss of this nature, the burden is upon the fiduciary to prove freedom from negligence. (*Underhill* v. *Newburger*, 4 Redf. 499.)

It appears in the account filed by the guardian and from the testimony that the interest was paid on this bond up to and including January, 1932, and that the total amount received was $113.75.

By his account the guardian claims credit for payments to the minor of the sum of $16.25 in January and July, 1929, January and July, 1930, January and July, 1931, and January, 1932, amounting to $113.75. This is denied by the minor. The guardian also asked that he be allowed the sum of $200 for maintenance, board and clothing his ward for a period of forty weeks that it is alleged she resided with him, while attending school in Verona, N. Y. The ward claims that she resided with the guardian from the 1st of March, 1931, to the fifteenth of April, the same year, a matter of about six weeks. In this particular the burden is also on the guardian to prove by a preponderance of evidence both the payments to the ward and the expenditures for maintenance. The evidence shows that the minor did reside with the guardian for a period of six weeks. The testimony of the guardian as to the forty-week period is not corroborated and is sharply disputed by the minor herself and by her mother. It is conceded by the minor that her guardian expended at various times the sums of $12.95 for a coat, $3.95 for a dress, $5.95 for another dress and an undisclosed amount for stockings.

On August 8, 1929, the guardian opened an account in the Oneida Savings Bank at Oneida, N. Y., in the name of his ward, Gladys A. Hillman, and on that date he deposited $16.25, and thereafter made the following deposits: July 5, 1930, $16.25; May 29, $1.05; August 19, 1931, $32.50. There also appears an interest credit on July 1, 1930, of sixty cents and on July 1, 1931, of $1.10. There was withdrawn from this account on November 1, 1930, the sum of $10 and on July 16, 1931, the sum of $1.10, leaving a balance on deposit of $56.65.

Upon the facts here found to exist, the account of the general guardian is surcharged in the sum of $500 and interest at the prevailing bank rate from January 1, 1932, together with the sum of $57.10, interest received by the guardian on the bond, but which is

unaccounted for. Credit is allowed for the sum of $21.85 proved to have been expended for clothing. As the guardian was under no duty to support the respondent during her minority, he is entitled to a reasonable amount for the period of six weeks during which these necessities were supplied by him. I find that six dollars per week would be reasonable in this instance, which total the sum of thirty-six dollars. He may be allowed his commissions to be determined upon the entry of the decree of settlement.

Enter decree accordingly on five days' notice.