■ PETER HEIMULLER, Doing Business as PETER'S SERVICE CENTER, Appellant, v AMOCO OIL COMPANY, Respondent. — Appeals by the plaintiff from (1) an order of the Supreme Court, Westchester County (Cerrato, J.), dated May

17, 1982, which (a) granted the defendant's motion to evict the plaintiff from certain premises pursuant to the terms of a stipulation of settlement, (b) directed that possession of the said premises be delivered to the defendant, and (c) denied the plaintiff's cross motion to vacate the said stipulation of settlement, and (2) a judgment of the same court dated May 17, 1982, which was entered thereon. Appeal from the order dismissed (see *Matter of Aho*, 39 NY2d 241, 248). Judgment affirmed. Defendant is awarded one bill of $50 costs and disbursements. Defendant Amoco Oil Company (Amoco) owns certain property in New Rochelle, New York. In 1971, Amoco entered into a lease and a gasoline dealership agreement with plaintiff Peter Heimuller under which he was to operate a full service gasoline station on the premises. Heimuller continued such operation under a succession of one-year leases until 1977 when Amoco commenced a summary proceeding in the City Court of New Rochelle to evict him from the premises. Heimuller then commenced an action in the Supreme Court, Westchester County, for a permanent injunction to restrain Amoco from terminating the dealership agreement. A temporary injunction was issued prohibiting Amoco from evicting Heimuller during the pendency of the action, and Amoco's summary proceeding was consolidated with the Supreme Court action. On March 11, 1981, as the case was about to be reached for trial, the parties entered into a stipulation in settlement of the consolidated actions. The terms of the stipulation, which were the product of discussions over a three-day period, were placed on the record in open court. In essence, they provided for the sale of the property to Heimuller for a purchase price of $200,000, of which $35,000 was payable upon the signing of the contract with the balance to be paid at closing. Closing was to take place within 180 days of the signing of the contract unless the time period was extended. The stipulation further provided as follows: "In the event the purchaser fails to close title in accordance with the terms of this agreement, then in that event the sum of $10,000.00 shall be retained by the seller as liquidated damages and the sum of $25,000.00 shall be returned to the purchaser within (5) days after demand and after the premises are vacated by the plaintiff * * * That in the event the seller at the time a tender of the balance of the purchase price is made is unable to deliver title to the premises in accordance with the terms herein, then in that event the landlord/tenant relationship shall continue until the seller complies with the terms of this agreement * * * That in the event the plaintiff is in default of the terms of this agreement, then in that event defendant upon (3) days written notice to the attorney for the plaintiff shall apply to the Supreme Court, Westchester County for an Order evicting the plaintiff from the premises. In the event defendant seeks an Order of eviction pursuant to this stipulation, plaintiff shall not raise the defense of notice under the petroleum marketing practice act or section 199 of the general business law." After the stipulation was read, the court addressed plaintiff Heimuller as follows: "THE COURT: And you have heard the stipulation placed on the record by your attorney and amplified by the attorney for the defendant? A. Yes I did. THE COURT: And you understood it fully and completely? A. Yes. I did. THE COURT: And you have had ample opportunity over the past several days to consult with your attorney, reflect on this and after doing so you totally and voluntarily agree to be bound by the terms of the stipulation? A. Yes. THE COURT: And you also understand that this is a final and irrevocable disposition of this lawsuit? A. Yes." Pursuant to the stipulation, the parties executed a contract for the sale of the premises. When Heimuller had difficulty in obtaining financing, Amoco afforded him extensions of the 180-day limit for closing and, at one point, offered to provide him with a second mortgage. It is alleged that Heimuller made no response to this

offer. Thereafter, alleging that Heimuller had failed to close on the property as provided in the stipulation, Amoco moved for "a judgment and warrant of eviction". Heimuller cross-moved to vacate the stipulation on the ground that his failure to comply with its provisions for the purchase of the property was due to conditions and circumstances beyond his control. Special Term granted Amoco's motion, issued a judgment and warrant of eviction in its favor, and denied Heimuller's cross motion. We affirm. It is well settled that stipulations of settlement which put an end to litigation are favored by our courts and will rarely be set aside in the absence of fraud, collusion, mistake or such other factors as would undo a contract (see, e.g., *Tetenbaum v Tetenbaum,* 78 AD2d 851; *Stiber v Stiber,* 65 AD2d 758; *Elyachar v Elyachar,* 43 AD2d 832; *Myers v Bernard,* 38 AD2d 619). This is especially true where, as here, the stipulation was read into the record in open court, and the party who later seeks to vacate it was represented by counsel and acknowledged to the court that he had a full understanding of, and voluntarily agreed to, the terms (see, e.g., *Breitman Iron Works v Rubsamen & Co.,* 55 AD2d 632). Heimuller's contention that the stipulation was tainted by economic duress and fraud is without merit. The assertion that he chose to enter the stipulation because of uncertainty as to the state of the law to be applied at trial does not constitute economic duress. Such duress may be established only by a showing of the existence of circumstances which would have overcome the exercise of free will (see *Pilgrim Homes & Garages v Fiore,* 75 AD2d 846, 848). Moreover, since the record reveals no false representation by Amoco upon which Heimuller relied in entering the stipulation, there has been no showing of fraud, actual or constructive (see *Brown v Lockwood,* 76 AD2d 721, 730-731). Furthermore, since the terms of the stipulation specifically contemplated the possibility that Heimuller would be unable to complete the purchase of the property, there is no merit in his present contention that the enforceability of the stipulation was impliedly conditioned upon his ability to obtain financing. We have reviewed the plaintiff's remaining contentions and find them to be without merit. Mollen, P. J., Gulotta, Brown and Boyers, JJ., concur.