In the Matter of NORTH BROADWAY
FUNDING CORP., Bankrupt.

Bankruptcy No. 77–B–1716–18.

United States Bankruptcy Court,
E.D. New York.

Nov. 17, 1983.

Corwin & Frey, New York City, for trustee.

George B. McPhillips, Mineola, N.Y., for Rob-Glen Enterprises and Donald, Eileen and Rose Feinman.

## DECISION AND ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

This matter is before the court upon a motion to set aside a compromise brought by Rob-Glen Enterprises, Inc. (hereinafter "Rob-Glen"), Eileen G. Feinman, Donald Feinman and Rose J. Feinman (hereinafter

"applicants"). The compromise was approved in this court on August 28, 1979 and resulted in the payment of $17,000 by applicants to the trustee in bankruptcy of North Broadway Funding Corp. (hereinafter "North Broadway" or "bankrupt").

The application predicates on two grounds: (1) that the bankrupt has been unjustly enriched by this payment; (2) that such settlement was made under a mistake of fact.

## FACTUAL CONTEXT

In December 1978, the trustee of the above-named bankrupt, Timothy W. Sullivan, by his attorneys, Corwin & Frey, notified Rob-Glen that it owed a debt to the bankrupt by virtue of the negotiation by Dolly-Cam Corp. (hereinafter "Dolly-Cam") to North Broadway of certain notes. The debt in question had been incurred in September 1976 when Rob-Glen received a loan from Dolly-Cam and executed and delivered, as evidence of this loan, a series of sixty promissory notes. The notes were personally guaranteed on the reverse side by each of the non-corporate applicants and a mortgage was executed to Dolly-Cam as mortgagee on two parcels as security for the payment of the notes.

In April 1979, the trustee sent Rob-Glen a copy of a document which was represented to be an assignment of the Rob-Glen notes and mortgage from Dolly-Cam to bankrupt dated November 16, 1976. In addition, a cancelled check was produced, allegedly issued by bankrupt and payable to Dolly-Cam dated October 16, 1976 indicating that it constituted consideration for the assignment of the mortgage and notes.

In June 1979, applicants offered to compromise the principle balance of $27,361.13 for a lump-sum payment of $17,000 on court approval. On August 28, 1979 a hearing was held in this court and the compromise was approved.

Pursuant to this court's order, the applicants sent the trustee three certified checks totaling $17,000, each dated August 30, 1979, and the trustee delivered a Satisfaction of Mortgage and General Release to applicants. The notes were not surrendered as they could not be located. In February 1980, approximately six months after this compromise was approved, the First National Bank of Long Island (hereinafter "First National"), formerly the First National Bank of Glen Head, commenced an action in the Supreme Court of the State of New York, County of Nassau, against the applicants to recover payment on these same notes. First National claimed to be the holder in due course of these notes as it had received the notes endorsed in blank from Dolly-Cam as collateral for a loan made in September 1976, on which Dolly-Cam defaulted. The Supreme Court held that the bank was a holder in due course and awarded judgment for the entire balance of the debt.

## ISSUE

May a party who has fully negotiated and entered into a court-approved compromise to pay a sum of money pursuant to a bona fide claim asserted by another party, later vacate the compromise and recover such sum under Rule 60 of the Federal Rules of Civil Procedure, on either a theory of unjust enrichment or of payment under mistake of fact?

## DISCUSSION

This is a case brought under the "Bankruptcy Act" (64 STAT. 1113 (1950)) (hereinafter "Act"). Rule 919 of the Bankruptcy Rules applicable to this proceeding provides that upon application of the trustee and upon notice to all creditors, the court may approve a compromise or settlement. After approval, such compromise or settlement takes the form of an order of the court and, under Rule 803, unless a timely notice of appeal is filed, such order becomes final. Rule 60 of the Federal Rules of Civil Procedure provides in pertinent part:

(b) Mistakes; Inadvertance; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertance,

surprise or excusable neglect ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken ...

Rule 60 applies to bankruptcy proceedings through Rule 924 of the Bankruptcy Rules except that under Rule 924 such motion is not subject to the one year limitation therein prescribed.

■ Stipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factors as would undo a contract. *Heimuller v. Amoco Oil Co.,* 92 A.D.2d 882, 459 N.Y.S.2d 868 (2nd Dept. 1983). It is likewise insufficient as a basis to rescind such a settlement to demonstrate that subsequent developments indicate that the bargain is more beneficial to one side than to the other. *Beecher v. Able,* 441 F.Supp. 426 (S.D.N.Y.1977), aff'd 575 F.2d 1010 (2d Cir. 1978). *A fortiori,* when one party seeks to set aside a court-approved settlement or compromise, entered into upon advice of counsel, there must be a showing of extraordinary circumstances and "new and unforeseen substantial change." *In re Cannady,* 6 B.R. 674 at 678 (Bkrtcy.D.Kan.1980), citing *United States v. Swift,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932); *Stewart v. Travelers Indem. Co.,* 27 Misc.2d 883, 209 N.Y.S.2d 854 (S.Ct. New York Co. 1961).

■ Applicants contend that the parties to the compromise operated under the mutual assumption of fact that the bankrupt was the holder in due course of the specified notes. Applicants further submit that the subsequent action commenced by First National and judgment entered by the Supreme Court apprised applicants that the bankrupt was not the holder in due course, and that these facts are sufficient to demonstrate "new and unforeseen substantial change" as required by Rule 60.

When applying the theory of mistake of fact under contract law, "there must be excluded from consideration mistakes as to matters which the contracting parties had in mind as possibilities and as to the existence of which they took the risk. With respect to any matter not made a basic assumption of the contract the parties take their chances." 13 S. Williston, *Contracts,* § 1543, p. 75 (3rd ed. 1970); *Wright & Pierce v. Town of Wilmington, Mass.,* 290 F.2d 30, 32 (1st Cir.1961).

The factual basis upon which settlement was reached has not changed from the date of the compromise. What has changed from such date is only the applicants' knowledge of relevant facts. At that time, applicants made a determination to settle the instant claim rather than to more fully explore its factual validity and were willing to rely upon inferences derived from certain documentary evidence submitted by the trustee in support of his position. Such determination was made notwithstanding that the trustee admittedly could not produce the promissory notes upon which the claim was based. Certainly, applicants ignored the possibility, underscored by the unavailability of the notes, that such notes were negotiated either by bankrupt or Dolly-Cam to a holder in due course.

In *Duchess Music Corp. v. General Music Corp.,* 28 Misc.2d 359, 210 N.Y.S.2d 82, 83 (S.Ct. New York Co.1960), aff'd 13 A.D.2d 639, 215 N.Y.S.2d 1012 (1st Dept. 1961), the court stated:

what was discovered months after the settlement could have been discovered by investigation prior to ultimate settlement. There could be no amicable composition if parties cannot freely settle disputed claims upon the basis of facts as they are known or assumed in good faith to be, save at the risk of attack by a disappointed party, should subsequent investigation reveal facts theretofore unknown to exist.

Although, assuming *arguendo,* applicants were mistaken as to the identity of the party to whom their obligation was owed, they had the ability to inquire further into

the factual underpinnings of the trustee's claim. Assuming that such discovery would not have disclosed the existence of the actual holder in due course, applicants could have nevertheless protected themselves by either incorporating an indemnity clause into their settlement, or by requiring the trustee of the bankrupt to commence a lawsuit to prosecute the claim.

The New York version of Uniform Commercial Code Section 3–804 entitled "Lost, Destroyed or Stolen Instruments" states:

> The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court shall require security, in an amount fixed by the court not less than twice the amount allegedly unpaid on the instrument, indemnifying the defendant, his heirs, personal representatives, successors and assigns against loss, including costs and expenses, by reason of further claims on the instrument, but this provision does not apply where an action is prosecuted or defended by the state or by a public officer in its behalf.

N.Y.U.C.C. § 3–804 (McKinney 1964).

Thus, if the trustee were formally required to commence his action, he would have been required to post security to protect applicants from subsequent claims on the notes. Instead of electing any of these alternatives, applicants freely entered into the compromise and have derived the attendant benefits therefrom. The reasonable inference from these facts is that applicants consciously determined to avoid the expense and inconvenience attendant to a full litigation with the trustee and determined to consolidate their losses through the vehicle of a compromise.

■ Applicants also contend that under FRCP 60(b)(6) they are entitled to relief from the compromise order on the theory of unjust enrichment. It is, however, a well settled principle of law that the doctrine of unjust enrichment is inapplicable where the relationship between the parties is founded upon a written agreement. *Indyk v. Habib Bank, Ltd.,* 694 F.2d 54 (2d Cir.1982); *Matarese v. Moore-McCormack Lines, Inc.,* 158 F.2d 631 (2d Cir.1946); *Bradkin v. Leverton,* 26 N.Y.2d 192, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970); *Andrews v. O'Grady,* 44 Misc.2d 28, 252 N.Y.S.2d 814 (S.Ct. Kings Co.1964); *Miller v. Schloss,* 218 N.Y. 400, 113 N.E. 337 (1916).

■ Rule 60 (and by reference Rule 924), does not permit relief from a final order when the effect of such relief would be to free the moving party from calculated and deliberate choices and decisions. *In re Cannady Supply Co. Inc., supra* at 678; *see U.S. v. Erdoss,* 440 F.2d 1221, 1223 (2nd Cir. 1971); *In re Tipton,* 18 B.R. 464 (Bkrtcy.E. D.Tenn.1982).

■ The Bankruptcy Court is a court of equity and, thus, may entertain a motion seeking to vacate a final order, which is singularly equitable in nature. "Equity, [however], should not intrude itself where knowledgeable parties contract and where they have not been overborne by actions of the other party." *In re M & M Transportation Company,* 13 B.R. 861, 868 (Bkrtcy.S.D. N.Y.1981). Likewise, it should not intrude in this instance to relieve a party from the foreseeable consequences of a conscious course of action.

For the foregoing reasons, applicants' motion is denied.

It is SO ORDERED.