CONSOLIDATED RAIL CORPORATION,
Appellant,

v.

PORTLIGHT, INC.

No. 98–2025.

United States Court of Appeals,
Third Circuit.

Argued June 18, 1999

Filed Aug. 16, 1999

Paul D. Keenan (Argued), Buchanan Ingersoll, Philadelphia, PA, for Appellant.

George R. Zacharkow, Mattioni, Mattioni & Mattioni, Philadelphia, PA, for Appellee.

Before: NYGAARD, STAPLETON and COWEN, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

Consolidated Rail Corporation ("Conrail") brought this diversity action against Portlight, Inc. ("Portlight"), seeking to rescind or reform a settlement agreement that the parties had previously entered into on the ground of mutual mistake. The District Court granted Portlight's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). We will reverse.

### I.

As this is an appeal from the District Court's grant of a motion for judgment on the pleadings, we accept as true all of the allegations in the complaint and draw all reasonable inferences therefrom in favor of Conrail. *See Taj Mahal Travel, Inc. v. Delta Airlines Inc.*, 164 F.3d 186, 189 (3d Cir.1998).

On March 31, 1996, the Victor Company of Japan entered into an agreement with American President Lines, Ltd. ("APL") in which APL agreed to transport 638 cartons of goods manufactured by the JVC Company from Yokohama, Japan to P.T.

Imports in New York City. The goods were transported by ocean liner from Japan to Los Angeles, and then by rail from Los Angeles to New York. A portion of the rail transportation was handled by Conrail, a Pennsylvania corporation.

When the shipment was eventually delivered to P.T. Imports, it was missing 68 cartons of the JVC merchandise. Consequently, P.T. Imports filed a claim with its insurance carrier, Reliance Insurance Company ("Reliance"), to recover the value of the missing goods. Upon receipt of a $140,521 payment from Reliance, P.T. Imports subrogated its rights and claims relating to the missing goods to Reliance, who then engaged defendant Portlight, a New Jersey corporation, to pursue recovery of the subrogated claims. Portlight submitted the claim to Conrail, and the parties eventually negotiated a settlement pursuant to which Conrail paid Portlight $120,302.53 in exchange for a release of all claims relating to the lost JVC merchandise.

Some months after the settlement agreement was executed, Conrail learned that APL and the Union Pacific Railroad Company ("Union Pacific") had previously negotiated a discounted rail freight rate covering all rail transportation in exchange for a limitation of rail carrier liability of $500 per package.[1] Neither Conrail nor Portlight was aware of this limitation of liability agreement at the time the settlement was reached. Under the terms of this agreement, which Conrail contends applied to its handling of the JVC merchandise, Portlight's maximum recovery would have been limited to $33,500.[2] Thus, according to Conrail, it overpaid Portlight by $86,802.33.

After Portlight rejected its demand to return the overpaid amount, Conrail initiated this action to rescind the settlement agreement, or alternatively to reform its terms, on the ground that the parties' ignorance of the APL–Union Pacific limitation of liability agreement constituted a mutual mistake of fact. On August 21, 1998, after Portlight had filed its answer but before any discovery had taken place, the District Court *sua sponte* ordered Portlight to file a motion to dismiss. Less than two months later, the District Court granted judgment on the pleadings in favor of Portlight.

The District Court based its decision on two grounds. First, it held that Conrail's lawsuit was precluded by the rule that "underestimating damages or making a settlement before damages are accurately ascertained is not considered a mutual mistake of fact." *Consolidated Rail Corp. v. Portlight Inc.*, No. 98–2157, Slip. Op. at 3, 1998 WL 726648 (E.D.Pa.Oct. 15, 1998). According to the District Court, this rule was dispositive of the instant case because "plaintiff made a settlement before the damages under defendant's claim had been accurately ascertained and before the plaintiff had accurately ascertained the scope of its potential liability for those damages." *Id.* Alternatively, the District Court concluded that Conrail's claim could not prevail because, even assuming that the parties' ignorance of the APL–Union Pacific agreement could be considered a mutual mistake, Conrail bore the risk of that mistake as a matter of law. *Id.* at 4.

■ Conrail appeals the District Court's order of dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review

1. While the complaint refers to an "agreement" between APL and Union Pacific, the parties in their briefs indicate that the rail carrier limitation of liability was actually included in a tariff filed by Union Pacific. This difference is not material to our resolution of the instant appeal, but for the sake of clarity, we will in this opinion refer only to the APL–Union Pacific agreement.

2. Although Conrail alleges in its complaint that its maximum liability under the APL–Union Pacific limitation of liability agreement is $33,500, that figure appears to be erroneous; 68 lost cartons of goods valued at $500 a unit would result in a liability of $34,000, not $33,500. This $500 disparity does not, however, affect our analysis of Conrail's appeal.

of the District Court's dismissal under Federal Rule of Civil Procedure 12(c) is plenary. *See Taj Mahal Travel*, 164 F.3d at 189. We will affirm the judgment only if plaintiff would not be entitled to relief under any set of facts that could be proved. *Id.*

## II.

 In this diversity action, both parties have assumed that Conrail's cause of action is governed by Pennsylvania law, an assumption that we have no reason to question. Under the law of that state, " '[t]he enforceability of settlement agreements is determined according to principles of contract law.' " *McDonnell v. Ford Motor Co.*, 434 Pa.Super. 439, 643 A.2d 1102, 1105 (1994) (quoting *Century Inn, Inc. v. Century Inn Realty, Inc.*, 358 Pa.Super. 53, 516 A.2d 765, 767 (1986)). As elsewhere, Pennsylvania courts recognize mutual mistake as a valid ground for rescinding or reforming a settlement agreement. *See, e.g., Lanci v. Metropolitan Ins. Co.*, 388 Pa.Super. 1, 564 A.2d 972, 974 (1989). "Mutual mistake exists where both parties to a contract are mistaken as to existing facts at the time of a execution." *Holt v. Dep't of Public Welfare*, 678 A.2d 421, 423 (Pa.Commw.Ct.1996). Furthermore, the doctrine will apply only where the mistake: (i) relates to the basis of the bargain; (ii) materially affects the parties' performance; and (iii) is not one as to which the injured party bears the risk. *See Lanci*, 564 A.2d at 974; Restatement (Second) Contracts, § 152 (1981).

Here, Portlight does not dispute that Conrail has adequately pled that both parties were unaware of the APL-Union Pacific limitation of liability agreement, that their ignorance of the agreement related to the basis of their bargain, and that it materially affected their performance. Instead, Portlight contends that it is entitled to judgment on the pleadings because, as found by the District Court: (i) the parties' ignorance of the limitation of liability agreement does not constitute a mistake

under mutual mistake doctrine, insofar as it involves an underestimation of damages; and (ii) to the extent that ignorance of the agreement could be considered a mistake, Conrail bore the risk of such a mistake because it failed to conduct a complete investigation of Portlight's claim. We will address these arguments in turn.

 As the District Court correctly observed, Pennsylvania courts have long held that underestimating damages or entering into a settlement before damages are adequately assessed is not a mutual mistake of fact. *See Emery v. Mackiewicz*, 429 Pa. 322, 240 A.2d 68, 70 (1968); *Klein v. Cissone*, 297 Pa.Super. 207, 443 A.2d 799, 803-04 (1982); *Bollinger v. Randall*, 184 Pa.Super. 644, 135 A.2d 802, 805-05 (1957). But the situations where this rule has been invoked are markedly different than the instant case. In *Emery*, for example, the plaintiff was injured in an automobile accident and agreed to settle his case for $350. In exchange for payment, plaintiff released the other driver from all claims—"[k]nown and unknown, suspected and unsuspected"—arising from the accident. *Emery*, 240 A.2d at 69. Over one year after the settlement was executed, plaintiff discovered that his injuries were far more serious than he had believed when he signed the release. Based on these circumstances, plaintiff sought to void the release on the ground of mutual mistake. The Pennsylvania Supreme Court rejected the claim, explaining that if such an " 'all-inclusive' release could be set aside whenever, *inter alia*, 'the magnitude of a releasor's injuries [ ] unexpectedly increased' ... [i]t would make a mockery of the English language and of the Law...." *Id.* at 70.

*Leyda v. Norelli*, 387 Pa.Super. 411, 564 A.2d 244, 245 (1989), the single case relied upon by the District Court, involved facts nearly identical to those present in *Emery*. The plaintiff in *Leyda* was also injured in an automobile accident and agreed to a monetary settlement in which she released the defendant from "all known and un-

known, foreseen and unforseen bodily and personal injuries...." *Id.*, 564 A.2d at 245. Some months later, plaintiff sought to have the release rescinded because her injuries turned out to be more serious than she had originally believed. Affirming the trial court's grant of judgment on the pleadings to the defendant, the Superior Court held that a "misjudgment as to the precise nature and extent of injury will not permit rescission of a release agreement which contains the broad language present in this case." *Id.*

*Emery* and *Leyda* thus stand for the proposition that a party who underestimates the future severity of her injuries will not be permitted to avoid the consequences of a settlement agreement based on mutual mistake. This is entirely consistent with the more general principle of mutual mistake doctrine that erroneous predictions of future events do not qualify as a mistake. *See M. Leff Radio Parts Inc. v. Mattel, Inc.*, 706 F.Supp. 387, 398 (W.D.Pa.1988); Restatement (Second) Contracts, § 151 cmt. a (1979) ("A party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake'...."). Were there not such a rule, the effectiveness of settlement agreements would be greatly diminished. As the Superior Court of Pennsylvania long ago explained:

> Settlements are necessarily based upon facts which are then available to the parties and there is always a risk that injuries may prove to be more serious or less serious than then contemplated. If a release is to be lightly set aside for no other reason that the parties were mistaken as to the extent and nature of the injuries, the effect of the release and the advantage of the settlement would be lost.

*Bollinger*, 184 Pa.Super. at 650–51, 135 A.2d 802.

In this case, however, Conrail does not allege that it erroneously estimated the damages that it owed to Portlight based on an inaccurate forecast of future events, or even that it misjudged the actual damages suffered by Portlight. Instead, it contends that it was not required to pay more than $33,500 to Portlight due to a limitation of liability agreement, which, unbeknownst to the parties, was allegedly in effect at the time the settlement agreement was executed. Under these circumstances, where the purported mutual mistake relates not to a prediction of future events, but to a material fact that existed at the time the release was executed, the mutual mistake doctrine is applicable. *See Erie Ins. Exchange v. Meza*, 35 D. & C.3d 514, 521, 1984 WL 2508 (Ct. of Pleas 1984) (where the parties predicated a release agreement upon an inaccurate determination of the total coverage provided by an insurance policy, release could be avoided because of the mutual mistake); *see also Snyder v. Penn Central Transp. Co.*, 296 Pa.Super. 69, 442 A.2d 300, 303 (1982) ("Though a mistake as to future fact is insufficient to avoid a release ..., a mistake as to the present nature of the injury will be grounds for avoiding it.") (citations omitted). Accordingly, we conclude that the District Court erred in holding that Conrail's mutual mistake claim was not viable as a matter of law.

We turn then to the District Court's alternative holding that Conrail bore the risk of any mutual mistake because it failed to properly investigate Portlight's claim for damages. The primary authority relied upon by the District Court for this conclusion is the Restatement, which provides that a party bears the risk of mistake when, *inter alia*, "[t]he risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." Restatement (Second) of Contracts, § 154(c); *see also Loyal Christian Benefit Assoc. v. Bender*, 342 Pa.Super. 614, 493 A.2d 760, 762 (1985). The District Court believed that it was reasonable to allocate the risk of mistake to Conrail in this case because "[f]aced with a claim for damages, the plaintiff should have investigated the basis of that

claim and its potential liability, including contacting APL and Union Pacific and obtaining complete information about the underlying contract." *Consolidated Rail Corp. v. Portlight Inc.*, No. 98–2157, Slip. Op. at 5, 1998 WL 726648 (E.D.Pa. October 15, 1998).

We think that this conclusion is plainly premature. At this early stage of the litigation, before any discovery has been conducted, we do not see how it is possible to arrive at an informed judgment concerning the appropriateness or thoroughness of Conrail's investigation of Portlight's claim. As the District Court acknowledged, in considering Portlight's motion under Rule 12(c), our review is confined to the allegations in the pleadings and we must accept Conrail's version of events as true. *See, e.g., Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991). The pleadings in this case, however, contain no information at all concerning the quality of Conrail's investigation or the reason why Conrail was unaware of the APL–Union Pacific limitation on liability when it settled Portlight's claim. Given this undeveloped factual record, we cannot agree with the District Court that it is "reasonable under the circumstances" to allocate the risk of mistake to Conrail.[3]

### III.

For the foregoing reasons, the District Court erred in granting Portlight's motion for judgment on the pleadings.

We will therefore reverse the October 16, 1998 judgment of the District Court

---

**3.** Portlight also contends that the District Court properly concluded that Conrail bore the risk of loss based on documentary evidence that Portlight attached to its motion for judgment on the pleadings. Portlight maintains that the District Court could have considered these materials even though they were matters outside of the pleadings pursuant to Fed.R.Civ.P. 12(c), which allows a court under certain circumstances to convert a motion for judgment on the pleadings into a motion for summary judgment. This argument must

and remand for additional proceedings consistent with this opinion.

Costs taxed against appellee.

fail for the simple reason that the District Court made no reference in its decision to the documentary evidence that Portlight submitted. There is simply no basis for us to conclude, as Portlight suggests, that the District Court ever considered these materials in dismissing Conrail's complaint.

