John ROTH a/k/a Jonathan Roth d/b/a John Roth Construction, Appellee

v.

OLD GUARD INSURANCE COMPANY, Appellant.

John Roth a/k/a Jonathan Roth d/b/a John Roth Construction, Appellant

v.

Old Guard Insurance Company, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 2, 2003.

Filed April 19, 2004.

Reargument Denied June 28, 2004.

Sheila A. Haren, Philadelphia, for Old Guard.

Roger J. Harrington, Philadelphia, for Roth.

Before: DEL SOLE, P.J., MUSMANNO and TAMILIA, JJ.

DEL SOLE, P.J.:

¶1 The present cross-appeals have been filed challenging the trial court's rulings in a non-jury trial which resulted in a finding permitting Plaintiff to recover business income and rental value from its insurer following two fires which damaged property owned by Plaintiff and insured by Defendant. Plaintiff seeks review of the trial court's denial of his motion for judgment n.o.v. on his claim for bad faith. Defendant alleges the trial court erred in denying its post-verdict motions and, its motion for remittitur, and in granting Plaintiff's motion for the addition of prejudgment interest. As judgment has been entered on the record the matter is now ripe for our review.

¶2 Numerous claims have been raised by the parties in their respective appeals. However our resolution of an issue raised by Defendant renders a discussion of these remaining matters unnecessary. At issue is the effect of a general release[1] signed by Plaintiff.

¶3 The question of the application and effect of the release is a matter which has been properly preserved for our review. It was first raised by Defendant in its New Matter wherein it pled the existence of an accord and satisfaction. It was litigated at trial and it was included by both parties in their proposed findings of fact and conclusions of law. The issue of the release was presented by Defendant in its post-verdict motions and again in its Statement of Matters Complained of on Appeal. The trial court recognized in its opinion that Defendant relied upon the fact that Plaintiff executed a release for each property which "did not specifically exempt or exclude any claims or losses covered under the policy, including loss of rents." Trial Court Opinion, 5/1/03, at 4. Further the trial court did not find that any mutual mistake or fraud precluded enforcement of the agreement as argued by Plaintiff. Inexplicably, however, the trial court failed to rule that the release was binding and controlling. For this reason we reverse the judgment in this matter.

¶4 The release at issue was executed following Plaintiff's claims against its insurance company for losses Plaintiff incurred at two adjacent properties which suffered fire damage. Defendant honored claims for property damage, but steadfastly refused to pay for lost rental income. Plaintiff filed the underlying action to recover for the lost rental income and Defendant responded by claiming that Plaintiff was not entitled to lost rental expenses because any suspension in the operations of property was not a result of the fire, but rather due to its non-rentable condition. In addition, Defendant asserted that Plaintiff could not recover because he signed a general release.

¶5 The release was introduced at trial. It provides in relevant part:

ONCE RECEIVED of OLD GUARD Insurance Company the sum of $222,238.00 [$161,500.00 with respect to the second property] in full payment, release and discharge of all claims and demands of the undersigned against the said company, arising from or connected with any loss or damage by reason of FIRE which loss or damage arose or occurred on or about 9/16/1999 [11/14/1999 with respect to the second property]; and in full payment, release and discharge of all claims and demands only as to the amount to be recovered for each of the two separate properties.

1. Although we reference a single "release" in this memorandum, there were actually two identical releases signed by Plaintiff differing

against the said Company under the certain policy of insurance . . . .

¶ 6 Plaintiff acknowledges his execution of the general release, but claims that it was signed by mistake. He asserts that his public adjuster, Barry Novick, drafted the release but failed to amend it when it came out of the computer. He argues that the failure to include an exception in the general release was inadvertent. In support of this claim he cites to the cover letter dated June 14, 2000, also drafted by Novick which was sent to Defendant with the release. He notes that this letter specifically indicates that the issue of loss of rental value was still in dispute. In addition Plaintiff refers to a June 19th letter sent by Defendant's claim representative, Rick Lambrecht, to Novick, which Plaintiff claims evidences Defendant's acknowledgment of the unresolved rental value issue.

¶ 7 In the absence of fraud or mutual mistake a general release is enforceable according to its terms. *Brosius v. Lewisburg Craft Fair*, 383 Pa.Super. 454, 557 A.2d 27, 29 (1989). With respect to general releases our Supreme Court held that "however improvident their agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of the case." *Buttermore v. Aliquippa Hospital*, 522 Pa. 325, 561 A.2d 733, 735 (1989). A mistake will afford no basis for relief in rescinding a release if the mistake is not mutual. *Smith v. Thomas Jefferson Univ. Hosp.*, 424 Pa.Super. 41, 621 A.2d 1030 1032 (1993). A unilateral mistake, which is not due to the fault of the party not mistaken, but to the negligence of the one who acted under the mistake, cannot be a basis for refusing to enforce the release according to its terms. *Id.* Moreover, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing. *Id.*

¶ 8 While Plaintiff claims a mistake was made in the drafting of this release there is no evidence of a mutual mistake. The letters Plaintiff references do not establish the existence of a mutual mistake regarding the terms of the release. The first set of these letters was sent by Plaintiff's adjuster to Lambrecht and is dated June 14, 2000. It states that enclosed with the letter are a proof of loss form and the release and subrogation document. It also reads:

> There remains two open issues in reference to this loss . . . The second issue is the rental value loss which you have categorically denied. Mr. Roth is still interested in pursuing coverage and eventual payment of this loss and may need to involve an attorney for final resolution.

Accompanying this letter is the general release signed on June 14, 2000, which does not make any provision to except the rental value loss. It provides that upon receipt of a full payment from Defendant, Plaintiff will release and discharge all claims and demands against Defendant which arise from or are connected to the fire.

¶ 9 The second letter cited by Plaintiff is from Lambrecht to Novick dated June 16, 2000. Although Plaintiff contends the Lambrecht letter was sent in response to the receipt of the Novick letter and accompanying release, upon reading of the letter it is clear it was not. It provides in part:

> Based upon our recent phone conversation and the Proofs that followed via facsimile, I believe that Mr. Roth's three (3) claims are finalized with the exception of the "building materials" and "loss of rents" issues.

. . .

Finally, please be advised that Old Guard **will not reconsider** its declination of Mr. Roth's loss of rents claim. We remain prepared to defend our position on this issue up to and including litigation, if necessary.

Thank you for your anticipated reply; as discussed, I will be out of the office on vacation until Monday, June 19th. However, in the interim, I will make arrangements for the settlement checks to be mailed to Ms. O'Neill, who will release them once she receives and reviews the original Proofs.

¶ 10 As noted the release sent to and ultimately received by Lambrecht was not ambiguous and it clearly and unequivocally released Defendant from all claims related to the fire. Upon receipt of the document the funds were distributed to Plaintiff thereby making the signed release an enforceable agreement.

¶ 11 The testimony offered at trial does not support Plaintiff's claim of a mutual mistake. While Novick testified as to intent regarding the release and his error in his drafting of the document, there is no similar testimony from Defendant's representative. Lambrecht was questioned about the release:

Q: After that agreement was reached with Mr. Novick did you receive a signed release from Mr. Roth?

A: I believe so, yes.

Q: And was that a general release to the best of your recollection?

MR. HARRINGTON: Objection

THE COURT: Overruled

A: I believe there were a few documents that were received from Mr. Novick. One would have been a proof of loss form and the other would have been a general release, yes.

Q: What is your understanding of what a general release is?

MR. HARRINGTON: Objection

THE COURT: Overruled.

A: My understanding is a general release releases the signee for any and all future claims made against the policy. N.T., 2/4/02, at 142–143.

¶ 12 Our review of the record in this matter finds no support for Plaintiff's claim of a mutual mistake. It is apparent that the release as drafted and signed did not convey Plaintiff's intent in excepting the loss rental claims. However, this unilateral mistake made by the drafting party cannot be the basis to ignore the unambiguous language of the release signed by Plaintiff and accepted by Defendant. This language releasing and discharging Defendant from all claims and demands arising from the fire, controls the outcome of this case and does not permit Plaintiff's recovery for rental value loss.

¶ 13 Based upon our ruling, any actions taken by Defendant following the execution of the release cannot support Plaintiff's bad faith claim. We further find support in the record for the trial court's conclusion that "the defendant's refusal to pay the lost rental claim was not frivolous, unfounded or the product of ill will." Trial Court Opinion at 8. As to this claim we affirm on the basis of the trial court's opinion. The trial court applied relevant law to the specific facts of this case and properly concluded that Plaintiff failed to establish that Defendant's denial of the rental loss claim was unreasonable and that it engaged in bad faith conduct.

¶ 14 At appeal No. 3507 EDA 2002, the judgment is vacated.

¶ 15 At appeal No. 3719 EDA 2002, the order denying Plaintiff's motion for judgment notwithstanding the verdict on the issue of bad faith is affirmed.