PENNSYLVANIA TURNPIKE
COMM'N, Plaintiff

v.

K & S TRUCKING LLC and Keith
A. Zinkowich, Defendants

No. CIV.A.04–1959.

United States District Court,
E.D. Pennsylvania.

March 30, 2005.

Nicholas M. Centrella, Vincent T. Cieslik, Conrad O'Brien Gellman & Rohn, Philadelphia, PA, for Plaintiff.

Beth Castelli Fitt, Rawle & Henderson LLP, Philadelphia, PA, for Defendants.

### MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

This case comes before the Court on parties' respective Motions for Summary Judgment. For the reasons set forth below, Plaintiff's Motion is granted in part and denied in part, and Defendants' Motion is denied with prejudice.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 15, 2002, Defendant Keith A. Zinkowich was operating a tractor trailer for Defendant K & S Trucking, LLC ("K & S"), a Wisconsin fuel transport company, on the Pennsylvania Turnpike. Zinkowich lost control of his K & S tractor trailer, colliding with signs, guard rails, embankments and a concrete overpass before the tractor trailer ignited in flames. An ambulance took Zinkowich from the scene of the accident.

On April 14, 2004, Plaintiff, the Pennsylvania Turnpike Commission (the "Commission"), brought this action seeking to recover $86,949.11 for the property damage it allegedly sustained as a result of the April 15, 2002 accident. Plaintiff's Complaint, originally filed in the Court of Common Pleas for Chester County, alleged negligent operation, maintenance, inspection and testing of the vehicle in question. On May 5, 2004, Defendants timely removed the action to this Court.

Defendants represent that Plaintiff's claims are barred and/or limited pursuant to a Property Damage Release (the "Release"), signed on behalf of the Commission on August 23, 2002, which released Defendants and their insurer, Great West Casualty Company ("Great West"), from any and all claims resulting from the accident in exchange for consideration of $1,322.07. This Court ordered limited discovery on issues related to the Release. Both sides filed the instant motions for summary judgment.[1]

Plaintiff represents that it mistakenly submitted to Great West damages and in-

---

**1.** The parties have accused each other of failing to comply with relevant Federal and Local Rules regarding the timing, procedure, and content of their respective filings. Neither party has fully met the procedural requirements of Local Rule of Civil Procedure 7.1. Plaintiff mistakenly followed the Court's instructions for summary judgment motions filed pursuant to Federal Rule of Civil Procedure 56(b)—which are not applicable to a *plaintiff,* and filed unnecessary Statements of Material Facts [Doc. ## 18, 19]. Both Plaintiff and Defendants then filed reply and surreply briefs without requesting the Court's permission. The Court's decision today considers both motions for summary judgment and the parties' subsequent filings but does not consider Plaintiff's Statements of Material Fact.

voices related to a property damage claim against Tim Alan Dalton, Commission claim number 02–010–314, instead of the K & S/Zinkowich damages, Commission claim number 02–010–341 [emphasis added]. Great West paid the Dalton invoices and damages without discovering the mistake: Plaintiff argues that Great West failed to notice the mistake because it did not conduct a full investigation or a proper assessment of damages. Plaintiff asks the Court to set aside and/or rescind the Release as based upon (1) a mutual mistake of material fact, (2) a unilateral mistake on the part of the Commission of which Defendants knew or should have known, or (3) the principles of equity and justice. Defendants counter that the mistake in question was Plaintiff's internal clerical error, a unilateral mistake which cannot be a basis for refusing to enforce an otherwise valid release, and request dismissal of this action.

## A. *Great West's Investigation*

Plaintiff's property damage claim was handled by Great West's liability adjuster Debbie Brzoska. The April 16, 2002 "initial review" notes in Brzoska's investigative file state that the tractor trailer blew a steer tire, hit a bridge pillar, burst into flames and completely burned.[2] Later that day Brzoska contacted JF Terry Associates ("JF Terry"), the "independent adjuster" assigned by Great West to investigate the cargo damage, fuel spill, and/or clean-up of the accident. JF Terry told Brzoska that the fire consumed any spilled fuel, and that the Pennsylvania State Po-

lice confirmed that there had been no fuel spill or clean-up. However, later that day JF Terry informed Brzoska that Lewis Environmental was out on the scene, transferring fuel from the tractor trailer to a tow truck and cleaning up the scene of the accident, and that Great West could expect an invoice from them.

Brzoska's Notes from April 22, 2002 state the following:

- Great West could use a fire report to review against the tow bill, which was expected to total approximately $15,000;

- JF Terry's scene investigation referred to a "[s]mall drainage ditch" and the vehicle hitting a concrete wall; and

- Brzoska told JF Terry to get a fire report.[3]

Brzoska's April 25, 2002 Notes summarize JF Terry's April 22, 2002 investigative report as follows:

- Lewis Environmental performed initial clean-up;

- the fire consumed "the brunt of spilled fuel";

- the local fire department and the tow facility were performing some additional clean-up;

- a private contractor was using a backhoe to fill in a drainage ravine with ballast stone along the side of the pull-off area at the scene of the accident;

- the concrete support wall was marked with black burn marks but no outstanding damage aside from some flaking at the top end, but was not being repaired.[4]

---

2. Brzoska's Investigative File Notes ("Brzoska's Notes") at 1 (attached to Defs.' Mem. in Sup. of Mot. for Summ. J. at Ex. B [Doc. # 15]). Ms. Brzoska has no independent memory of any of the documents contained in her investigative file or of any conversations, thoughts or impressions of her investigation; her deposition responses essentially consisted

of "I don't know" and "I don't recall." *See* Pl's Opp. to Defs. Mot. for Summ. J., Ex. CC [Doc. # 17].

3. Brzoska's Notes at 1.

4. *See id.* at 2.

Brzoska's Notes from June 2002 indicate the following:

- she spoke to Zinkowich several times regarding his medical bills in excess of $11,000;
- she sent a draft for $5,000.00, the full amount of his medical coverage, to him at his residence in Wisconsin.[5]

## B. *The Release*[6]

On May 14, 2002 Plaintiff sent K & S a letter signed by Commission claims supervisor Elizabeth Little, with an Insurance Information Sheet attached.[7] The letter informed K & S that the Commission had incurred expenses as a result of the April 15, 2002 accident, and placed K & S on notice that it would be billed these expenses once they were compiled. The letter referenced K.A. Zinkowich as the "operator" and incorrectly cited "02–010–314" as the Commission's claim number. Brzoska completed the Insurance Information Sheet and returned it to the Commission.[8]

The Commission's next letter regarding the accident, dated August 9, 2002, was also signed by Little.[9] This letter references K & S, the correct Great West policy and file number, Commission incorrect claim number 02–010–314, and an enclosed "invoice in the amount of $1,322.07, which covers the costs that were incurred by the Pennsylvania Turnpike Commission resulting from the above-captioned matter."

The enclosed "customer invoice" was for $1,322.07, referenced the incorrect claim number 02–010–314, and referred to "Tim Alan Dalton" of "524 East Main, Salem, IL." The enclosed Itemized Breakdown of Costs totaling $1,322.07 referred to EMT, equipment and materials for a fire.[10]

Brzoska's August 14, 2002 Notes state that during a telephone conversation Little told her that the "[b]ill is for traffic control, clean-up, and fire co/EMS charges. There'll be no additional bill from the fire dept, as it's included in this invoice." Later that day Brzoska told JF Terry to close their file because she was paying the Commission's claim for $1,322.07, and closed her own file pending receipt of the signed Release from the Commission. Despite Brzoska's requests for police and fire reports in the previous months, JF Terry had not provided those to Brzoska at the time of her settlement with the Commission. Brzoska's August 14, 2002 Notes also state that after instructing JF Terry to close their file, she told them to forward her police and/or fire reports if JF Terry ever received them.[11] Brzoska's September 20, 2002 Notes indicate that she received a copy of the police report, but none of her Notes reflect that she ever received invoices from Lewis Environmental or the tow company.[12] She also has no recollection of receiving such invoices.[13]

Brzoska then sent the Release to the Commission, and it was reviewed, signed

---

5. *See id.* at 2–3.

6. The following facts are undisputed.

7. Commission's May 14, 2002 letter is attached to Defs.' Mem. in Sup. of Mot. for Summ. J. at Ex. E.

8. *See* Brzoska's Notes at 2.

9. Commission's August 9, 2002 letter is attached to Defs.' Mem. in Sup. of Mot. for Summ. J. at Ex. H.

10. *See id.*

11. *See* Brzoska's Notes at 3.

12. *See id.* at 4.

13. *See* Pl's Opp. to Defs. Mot. for Summ. J., Ex. CC at 82:1–3, 96:24–97:5.

and notarized on behalf of the Commission on August 23, 2002.[14] The Release was for $1,322.07, and it stated that the Commission released K & S, Zinkowich and Great West from all claims resulting from the April 15, 2002 accident. There were no further communications between the Commission and Great West regarding the accident until a year later. Brzoska's Notes from September 2, 2003, state the following:

- she received a telephone call from "Caroline" from the Commission, requesting a status of payment on claim number 02–010–341 [emphasis added];
- she called the Commission and advised Caroline that a settlement draft for $1,322.07 had been issued to the Commission on August 14, 2002 and had cleared on September 5, 2002;
- Caroline said that her claim was for over $88,000, that she will look into this and call back.[15]

Brzoska's Notes from September 3 and September 4, 2003, indicate several phone calls between Brzoska and Little, with Little admitting that there had been a billing error at the Commission.[16] On September 22, 2003, Brzoska received correspondence from the Commission which stated that the original invoice was incorrect, and that it should have been for $88,271.18, with supporting work bills attached.[17] Brzoska's September 23, 2003 Notes state that she contacted legal counsel to review the matter and give her an opinion.[18] On September 24, 2003, Brzoska spoke to the insured and advised them she was sending her file to a defense attorney.[19] This action ensued on April 14, 2004.

## II. DISCUSSION [20]

Defendants argue that the sole grounds for setting the Release aside are fraud on behalf of Great West or mutual mistake. Plaintiff has not alleged fraud. Defendants deny a mutual mistake, arguing that Great West and its insureds had no idea of the extent of the Commission's damages and had no reason to believe that these damages would exceed $1,322.07. Great West did not obtain a copy of the police report until one month after the Release had been signed and the settlement draft had been cashed, and the Commission had not provided it with any invoices or receipts other than the mistaken August 9, 2002 package.

Defendants argue that, taking the Commission's August 9, 2002 package as a

---

14. The Release is attached to Pl's Opp. to Defs. Mot. for Summ. J., Ex. EE.

15. Brzoska's Notes at 4.

16. *Id.* at 4.

17. *Id.* at 4.

18. *Id.* at 4.

19. *Id.* at 5.

20. The well-known standard of review for a summary judgment motion applies here:

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, all facts must be viewed and all reasonable inferences must be drawn in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587, 106 S.Ct. 1348.

whole, it was reasonable for Great West to presume that the demand was for damages sustained by K & S and not Tim Alan Dalton. The August 9, 2002 letter referenced the correct date of the accident, K & S as the insured, and 02–010–314 as the Commission's claim number. The attached invoice, albeit with Tim Alan Dalton's name on it, was for $1,322.07, and referred to claim number 02–010–314. The attached Itemized Breakdown of $1,322.07 referenced claim number 02–010–314 and fire, EMT and trucks at the scene of the accident—which Defendants argue were consistent with the K & S accident. Defendants also contend that the invoice did not clarify whether Mr. Dalton was an employee of the Commission.

Defendants' final argument is that underestimating damages or entering into a settlement agreement before damages are adequately assessed is not considered a mutual mistake of fact.[21]

## A. *Mutual Mistake*

■ Pennsylvania law[22] recognizes the theory of mutual mistake as a valid ground for rescinding or reforming a settlement agreement or a release.[23] The doctrine applies only where the mistake relates to the basis of the bargain, materially affects the parties' performance, and is not one as to which the injured party bears the risk.[24] A party bears the risk of mistake when: "(1) the risk is allocated to it by agreement of the parties; (2) the party is aware, at the time the contract is made, that it has only limited knowledge with respect to the facts to which the mistake relates but treats its limited knowledge as sufficient, or (3) the risk is allocated to the party by the court on the ground that it is reasonable in the circumstances to do so."[25]

Defendants do not argue that the mistake here is not material, that it does not relate to the basis of the bargain, or that it does not materially affect the parties' performance. They assert that the mistake here was a unilateral clerical mistake by the Commission, and that Great West and Defendants were not aware of it.[26]

### 1. *Mutuality*

Plaintiff maintains that both parties were mistaken as to the proper tortfeasor and the correct amount of damages. Debbie Brzoska had no rational reason to presume that Tim Alan Dalton of Salem, Illinois was involved in the accident, much less that he was an employee of the Pennsylvania Turnpike Commission. Brzoska knew that Keith Zinkowich of Athens, Wis-

---

**21.** Defendants do not deny that the mistake or "conglomeration" thereof is material or that it would affect the materiality of the parties' performance. The Court is not convinced by Defendants' attempt to distinguish the language in the Restatement by classifying the underlying mistake here as a "conglomeration of mistakes."

**22.** Neither party contests that Pennsylvania law governs this diversity action.

**23.** *Consol. Rail Corp. v. Portlight, Inc.,* 188 F.3d 93, 96 (3d Cir.1999).

**24.** *Id.; see also Lanci v. Metro. Ins. Co.,* 388 Pa.Super. 1, 564 A.2d 972, 974 (1989).

**25.** Restatement (Second) of Contracts § 154 (2004); *see also In re Allegheny, Intern. Inc.,* 954 F.2d 167, 180 (3d Cir.1992) (noting that section 153, and by implication section 154, was cited approvingly by the Pennsylvania Superior Court in *Lanci,* 564 A.2d at 974–75).

**26.** As Plaintiff correctly points out, Defendants' argument that a unilateral mistake due to the negligence of the party acting under the mistake cannot be a basis for refusing to enforce a release according to its terms, misstates the law. *See Kramer v. Schaeffer,* 751 A.2d 241, 246 (Pa.Super.2000) (if another party knows or has good reason to know of unilateral mistake, relief from contract will be granted to same extent as a mutual mistake).

consin was the only driver involved in the accident, whereas Mr. Dalton is not mentioned anywhere in Brzoska's notes or in JF Terry reports, nor does Great West insure him. However, even though she called the Commission to inquire about an additional fire invoice, Brzoska never contacted the Commission or JF Terry to find out who Mr. Dalton was and how he was involved in the accident.

Plaintiff further argues that this is not a case of the Commission underestimating its damages or failing to timely assess them, since the Lewis Environmental clean-up bills alone, received by the Commission prior to the settlement, exceeded $10,000.00. The mistake in question began when the Commission interposed two claim numbers and sent the wrong invoice and damages to Great West. The mistake continued through the settlement, when Great West paid damages caused by a wrong tortfeasor in a completely different accident.

 Defendants' argument on unilateral mistaken estimation of damages is misplaced. Here the parties were mistaken as to the very nature of the claim being settled. As pointed out by Plaintiff, the parties settled based on the wrong invoices for the wrong tortfeasor. While "erroneous predictions of future events do not qualify as a mistake," a mistake as to a material fact that exists at the time a release is executed is grounds for avoiding the release.[27]

In *Consolidated Rail* the District Court denied the plaintiff rail carrier's request to rescind or reform a $120,302.53 settlement agreement with an insurer's agent on the grounds of mutual mistake. The parties settled without knowledge of a limitation of liability agreement that allegedly applied to limit the defendant's recovery. The District Court granted the defendant judgment on the pleadings, stating that no mutual mistake existed because the plaintiff entered into the settlement before accurately ascertaining its damages. The Third Circuit reversed because the plaintiff did "not allege that it erroneously estimated the damages that it owed to Portlight based on an inaccurate forecast of future events, or even that it misjudged the actual damages suffered by Portlight," but contended that under the limitation of liability agreement, allegedly in effect at the time of the settlement, it was not required to pay the defendant more than $33,500.[28] Since both parties were unaware of a material fact in existence at the time the release was executed, the mutual mistake doctrine applied. Similarly, here the parties were unaware that they entered into a Release predicated on an invoice for a different accident.[29]

---

27. *Consol. Rail,* 188 F.3d at 97.

28. *Id.* at 97.

29. Defendants' reliance on *Holt v. Dep't of Pub. Welfare,* 678 A.2d 421 (Pa.Cmwlth.1996), is misplaced. The *Holt* court's reasons for declining to rescind a release on the grounds of mutual mistake are not present here: (1) the plaintiff agreed to withdraw all of his pending actions against the defendant, his former employer, in exchange for withdrawal of welfare fraud charges against the plaintiff; (2) the release was negotiated by parties' counsel in court; and (3) the release specifi-

cally covered the plaintiff's breach of contract claims for lost employment, back pay, and lost wages. *Id.* at 423–24. The plaintiff claimed that he was entitled to pursue those claims because the parties were mutually mistaken and the release was supposed to apply only to the plaintiff's grievance arising out of his employment and not to his breach of contract claims. The court found that there was substantial evidence showing that the defendant employer fully intended to obtain a release of all pending claims by plaintiff, including his breach of contract claims. *Id.* at 423. *Holt* is factually inapplicable here because the parties wanted to release exactly the

## 2. *Bearing Risk*

Plaintiff next argues that under Section 154(b) and (c) of the Restatement (Second) of Contracts, Great West, and not the Commission, bore the risk here. Great West concedes that they entered into the settlement with limited knowledge of the facts, such as the Commission's damages. Even after reviewing her notes, Ms. Brzoska could not recall whether she had all the facts needed to evaluate the Commission's proposal, or what factors, if any, she considered in evaluating the settlement. As was her standard operating procedure, Brzoska requested copies of fire and police reports from JF Terry and repeated the request on numerous occasions, yet chose to enter into the settlement without the benefit of a police report detailing the damage created by their insured. Finally, Brzoska conducted little or no investigation after receiving the August 9, 2002 letter from the Commission on August 14, 2002. The only actions she took was to call Little at the Commission to inquire if there would be a separate bill from the fire department and close her file the same day. Plaintiff argues that Brzoska received a relatively small claim and settled it that very day without paying much attention, if any, to the invoice in question, support for the claim, or the remainder of her investigation file.

Defendants deny that Great West paid damages for the Dalton claim, relying on the Release itself, which on its face releases claims against Defendants K & S and Zinkowich without any mention of Mr. Dalton, and on the August 9, 2002 invoice, which references Mr. Dalton without indi-cating his role in the accident. Defendants blame Plaintiff for failing to provide a timely assessment of damages and supporting documents to them and argue that requiring them to conduct a thorough investigation to establish plaintiff's claims of damages would set a precedent that "would destroy the principles of benefits of settlement agreements." Defendants further assert that they had nothing to do with the Commission's transposition of claim numbers and its failure to review the invoices and the Release prior to signing it.

Aside from the circular nature of Defendants' argument blaming Plaintiff for providing the incorrect invoice, their representation that Great West paid the K & S/Zinkowich claim and not the Tim Alan Dalton claim is simply illogical. The record as discussed above shows that both parties *mistakenly thought* that Great West paid Plaintiff's claim for damages caused by Defendants, whereas in reality Great West paid damages on the wrong invoice.[30] Therefore, the Court grants Plaintiff's motion to set aside the Release on the grounds of a mutual mistake.

## B. *Unilateral Mistake*

■ Generally, if a mistake is not mutual but unilateral, and is due to the negligence of the party which acted pursuant to the mistake, it affords no basis for relief from the contract. However, if the other party knows or has good reason to know of the unilateral mistake, and the actual intent of the parties is clearly shown, relief from the contract will be granted to the

---

same claim, that of the Commission against Defendants K & S and Zinkowich, but instead entered into a settlement based on a different claim.

**30.** The invoice in question is entitled "customer invoice," with Tim Alan Dalton's name is directly under the "customer invoice" caption. It states "please remit to Pennsylvania Turnpike," refers to "customer no. 02–010–314," and July 23, 2002 as a "reference date." *See* Commission's August 9, 2002 Letter.

same extent as a mutual mistake.[31] Further, section 153 of the Restatement (Second) of Contract provides that if at the time of making the contract one party made a material mistake as to a basic assumption underlying the contract, the contract is voidable by that party if it does not bear the risk of the mistake, and (a) enforcement of the contract would be unconscionable or (b) the other party had reason to know of the mistake.[32]

Plaintiff argues that Mr. Dalton's name on the August 9, 2002 invoice gave Brzoska actual knowledge or at least reason to know of Plaintiff's clear mistake. Brzoska had a duty to review invoices and pay only those claims for which her insured was liable. Plaintiff also points to flaws in Brzoska's investigation of Plaintiff's claim, including her failure to obtain a copy of the police report, carefully review photographs of the scene which clearly showed damage to guard rails and panels not listed on the Dalton invoice, and to follow up on several unresolved questions of accident-related repairs.

■ Defendants curtly respond that Section 153 is inapplicable here because enforcement of the Release is not unconscionable. Defendants further argue that they did not know of Plaintiff's mistake and that, in light of Plaintiff's negligence, it is reasonable for the Court to determine that Plaintiff bore the risk of the mistake.[33] However, as pointed out by Plaintiff, information in Brzoska's investigation file provided numerous indications that the accident would give rise to much more than a $1,322.07 claim, and therefore Great West had reason to know that the Commission was mistaken as to the claimed amount.[34] Under the circumstances, Great West, as the indemnifying party, bore the risk and should have exercised greater care in ensuring that it was covering damages actually inflicted by their insured.[35] The par-

---

31. *Kramer,* 751 A.2d at 246; *Lanci,* 564 A.2d at 975.

32. Restatement (Second) of Contracts § 153; *see also Lanci,* 564 A.2d at 974–75 (voiding settlement based upon the plaintiff's unilateral mistake where the plaintiff's letter to the insurer indicated that the plaintiff accepted settlement under a mistake belief as to the limit of his insurance coverage).

33. *Roth v. Old Guard Ins.Co.,* 850 A.2d 651 (Pa.Super.2004), relied upon by the Defendants, is inapposite to the instant facts. The court in *Roth* refused to set aside a release between insured and insurer on the grounds of mutual or unilateral mistake. The insured alleged that the release's failure to exclude a claim for lost rental expenses was a mutual mistake. The court disagreed, finding that the mistake was unilateral. The insured was not entitled to relief because he drafted and signed the release without including any exceptions after the insurer refused to pay for the insured's lost rental expenses and subsequently declined to reconsider its refusal. There was no evidence that the insurer was mistaken because it unequivocally expressed its desire to deny coverage for lost rental

expenses on numerous occasions. Conversely, here there is no evidence that Defendants or Great West did not wish to settle the Commission's claim against K & S and Zinkowich.

34. The exact scope of Brzoska's investigative file at the time of the settlement has been a contentious issue for the parties. On one hand, Ms. Brzoska's testimony that certain photographs and reports simply appeared in her file without her knowledge is neither particularly enlightening nor convincing. However, even taking the evidence in the light most favorable to Defendants and excluding the contested materials, such as the ninety JF Terry photographs and the April 18, 2002 JF Terry Report, the Court finds that on August 14, 2002 Brzoska's file contained sufficient information regarding the severity of the accident to put Ms. Brzoska on notice of the Commission's mistake.

35. Plaintiff also appeals to the Court's equitable powers, asking it to set aside the Release to prevent substantial harm to a public entity supported by the toll paying public. Defendants' policy with Great West included sufficient liability insurance to cover the Commis-

ties' actual intent, as clearly shown by the record, was to settle the Commission's claim against Great West's insureds K & S and Zinkowich, not against Tim Alan Dalton. The Court therefore finds that the Release should be set aside because Defendants had reason to know, or should have known, of the Commission's clear mistake.

## IV. CONCLUSION

For the foregoing reasons, construing the evidence in the light most favorable to Defendants, Plaintiff's claim that the Release should be set aside and/or rescinded on the grounds of mutual or unilateral mistake is granted.

An appropriate Order follows.

### ORDER

**AND NOW**, this 30th day of March, 2005, upon consideration of Plaintiff's Motion for Summary Judgment [Doc. # 14], Defendants' Response thereto and accompanying documents and exhibits [Doc. # 16], Plaintiff's Reply [Doc. # 20], Defendants' Motion for Summary Judgment and accompanying documents and exhibits [Doc. # 15], Plaintiff's Response thereto [Doc. # 17], Defendants' Reply and accompanying documents and exhibits [Doc. # 22], and Plaintiffs' Sur–Reply [Doc. # 23], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment is **DENIED WITH PREJUDICE** and that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**

Specifically, Plaintiff's Motion is **GRANTED** and **JUDGMENT IS ENTERED** in favor of Plaintiff against Defendants on Plaintiff's claims of setting aside/rescinding the Property Damage Release that released Defendants K & S Trucking LLC, Keith A. Zinkowich, and the Great West Casualty Company from any and all damage claims resulting the April 15, 2002 accident in exchange for consideration of $1,322.07, on the grounds of mutual mistake or, alternatively, unilateral mistake.

It is further **ORDERED** that Plaintiff's claim against Defendants for $86,949.11 is **DENIED WITHOUT PREJUDICE.**

Counsel are further **DIRECTED** to confer and submit to the Court a proposed modified Scheduling Order addressing remaining discovery issues relating to actual damages within ten (10) days of the date of this Order.

It is so **ORDERED.**

sion's claim, and paying damages in the proved in the damages phase of this case would not significantly prejudice Defendants.

Defendants somewhat incomprehensibly respond that the Commission is not an individual or some small entity that will be harmed by its unilateral mistake, and the toll paying public will not be paying for Plaintiff's error because the Commission is beginning a $181 million highway expansion project. Plaintiff replies that is a self-funded, self-insured entity supported by the Turnpike toll income, and therefore the toll paying public will indeed suffer the loss of over $86,000. While the Court does not reach its decision on the grounds of equity and justice, it notes that Defendants failed to respond to Plaintiff's arguments.