J-A21032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JEFFREY RAPOPORT AND NANCY RAPOPORT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2521 EDA 2021 |
| STUART LUNDY, ESQ. BYRON B. HOWELL, PA BYRON HOWELL, ESQ. LUNDY BELDECOS & MILBY, PC LUNDY FLITTER BELDECOS AND BERGER, PC | : | |

Appeal from the Order Entered November 15, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2015-20470

BEFORE:    LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED SEPTEMBER 30, 2022**

In this legal malpractice matter, Jeffrey Rapoport and Nancy Rapoport (collectively, Appellant) appeal from the order entered in the Montgomery County Court of Common Pleas, granting summary judgment in favor of: Stuart Lundy, Esquire; Byron B. Howell, PA; Byron Howell, Esquire; Lundy Beldecos & Milby, PC; and Lundy Flitter Beldecos and Berger, PC (collectively, Appellee).[1]  The trial court: (1) concluded Appellant was barred from recovery

_____

[1] Nancy Rapoport is Jeffrey Rapoport's wife.  For ease of discussion, and as "her status is derivative of her husband's claim," we will, consistent with the trial court's opinion, use the singular term "Appellant."  **See** Amended Trial
*(Footnote Continued Next Page)*

against Appellee by a general release previously executed in a related lawsuit; and (2) rejected Appellant's claim the release should be disregarded under the doctrine of mutual mistake. On appeal, Appellant avers the trial court erred in: (1) applying an incorrect standard; and (2) weighing deposition testimony and reaching an issue of material fact. We affirm.

## I. Facts & Procedural History

Appellant is the plaintiff in both the instant legal malpractice suit and a prior, related matter (the Family Lawsuit). We first summarize that Appellant and his siblings, Paula Rapoport Katz (Sister) and Mitchell Rapoport (Brother), co-owned and operated family businesses RMJP, LLC (RMJP), Carmic Manufacturing Co., Inc. (Carmic), and approximately 20 related entities.[2] *See* Amended Op. at 3. According to Appellant, he, his siblings, and RMJP "were all represented over time by" Appellee, an attorney at law. Appellant's Third Amended Complaint, 11/20/14 (Complaint), at ¶ 4.[3] In 2006, Appellee

_____

Ct. Op., 1/28/22 (Amended Op.), at 1 n.1. Meanwhile, Attorney Lundy works for the law firm, Lundy, Beldecos & Milby, PC, and neither Appellant's brief nor the trial court's opinion discusses Byron B. Howell. Accordingly, we refer to the defendants collectively with the singular "Appellee."

[2] Another sibling, Randy Rapoport (Randy), was, along with Appellant and Sister, an owner of Carmic. Closing Agreement & General Release, 9/11/14 (General Release), at 1 (unpaginated), Exh. 3 to Appellee's Amended Answer with New Matter to Appellants' Third Amended Complaint, 12/30/20.

[3] All of the earlier pleadings filed in the Philadelphia Court of Common Pleas, spanning 790 pages, appear together as one entry within the electronic certified record transmitted on appeal. For ease of review, we note the third
*(Footnote Continued Next Page)*

drafted an operating agreement for RMJP, which, *inter alia*, planned for the division of Brother's assets after his death. Amended Op. at 6. That same year, Appellee also drafted a will for Brother. Complaint at ¶ 9.

At some point, Appellant and Sister had a dispute over the operation of FMJP. Amended Op. at 3. Brother passed away in 2012, and his shares in RMJP succeeded to Sister, "making her the majority shareholder in RMJP and [Appellant] the minority shareholder." *Id.* at 3-4; Complaint at ¶ 18.

In February of 2013, Appellant filed the Family Lawsuit[4] in Montgomery County against Sister, alleging she breached her fiduciary duty as executrix of Brother's estate, when Brother's "membership interest in [RMJP] automatically succeeded to her upon his death. The suit further alleged [Sister] based her actions on the RMJP Operating Agreement, drafted by [Appellee], which deprived [Appellant] of his membership interest in [Brother's] shares in RMJP.[ ]" Amended Op. at 4 (record citations omitted). Later that same year, on December 13th, Appellant commenced the instant malpractice action against Appellee by filing a praecipe to issue a writ of summons in Philadelphia.

---

amended complaint appears at pages 322 through 334 of the electronic record.

[4] This matter, **Rapoport v. Katz**, was docketed in Montgomery County at 2013-01561. Amended Op. at 4.

- 3 -

Nine months thereafter, on September 11, 2014, Appellant and Sister executed a settlement and release agreement (the Release) in the Family Lawsuit. The Release disposed of the disputed assets from Brother's shares of RJMP.[5] Amended Op. at 4. The Release also provided:

As of the Closing Date, [Appellant, Sister, and Randy], and his or her executors, administrators, heirs and assigns . . . **knowingly and voluntarily waive and release the other Parties and their** heirs, executors, administrators, . . . successors, assigns [and] **attorneys**, . . . (collectively, the "Released Parties"), **from any and all actions, claims, . . . or suits** . . . (collectively, "Claims"), known and unknown, **that such Party have or may have against the Released Parties as of the date of execution of this Agreement**, including without limitation any Claims relating to . . . the [Family] Lawsuit . . . .

This release is comprehensive and includes any Claim that such Party could assert against the Released Parties based upon acts or omissions that occurred, or . . . could be alleged to have occurred, before the Parties executed this Agreement. This release . . . includes but is not limited to Claims based on: negligent or intentional tortious conduct; express or implied contract; . . . [or] any federal or state common law or federal, state or local laws . . . .

General Release at 8-9 (emphases & paragraph break added). At the time the Release was executed, Appellant was represented by Robert LeFevre, Esquire. Amended Op. at 6. As stated above, the Release was executed **after** the instant legal malpractice suit against Appellee was filed.

This matter was transferred from Philadelphia to Montgomery County on June 15, 2019. On November 14, 2020, Appellant filed a third amended

---

[5] Randy also signed a portion of the Release. Amended Op. at 4 n.5.

complaint, which averred four counts against Appellee: legal malpractice, breach of contract, breach of fiduciary duty, and loss of consortium. Appellant asserted Appellee: (1) "engaged in a conflict of interest by concurrently representing [Appellant], his siblings, and RMJP[;]" and (2) "failed to inform [Appellant] that [Brother's] assets would not be divided equally among the remaining members of RMJP." Amended Op. at 5 (record citations omitted). Appellant alleged Appellee's conduct caused his "losing a portion of [Brother's] shares in RMJP[,] almost total financial exclusion from RMJP, and . . . financial loss and emotional distress." *Id.* at 5-6 (record citations omitted).

On June 4, 2021, Appellee filed the underlying motion for summary judgment, arguing the plain language of the 2014 Release barred Appellant's recovery in this matter. Additionally, with respect to Appellant's claim of a mutual mistake — that he and Sister did not intend the Release to extend to this malpractice suit[6] — Appellee denied Appellant had any "plausible basis in fact to claim he was mistaken as to the consequences of . . . entering into the" Release. Appellee's Memo. of Law in Support of Summary Judgment, 6/4/21, at 13. In support, Appellee attached a portion of Attorney LeFevre's deposition testimony — that he had explained to Appellant that by entering

---

[6] Appellant had previously raised the doctrine of mutual mistake in his reply to Appellee's answer and new matter. Appellant's Reply to Appellee's Amended New Matter, 1/19/21, at ¶¶ 88, 91.

the Release, Appellant would forfeit any claim against anyone identified as a released party.

Appellant filed a response, insisting there was a mutual mistake in the execution of the Release, as neither he nor Sister intended the Release to bar Appellant's malpractice action against Appellee.[7] In support, Appellant quoted: (1) several portions of Sister's deposition testimony, which purportedly showed she had not contemplated Appellant's lawsuit against Appellee; as well as (2) a different statement in Attorney LeFevre's deposition — that he did not in fact ask Appellant if he understood he would no longer be able to sue the "released parties."[8]

On November 15, 2021, the trial court granted Appellee's motion for summary judgment. The court first agreed that the plain language of the Release barred recovery in this matter. It also rejected Appellant's claim of a

_____

[7] Appellant also asserted, in the alternative, that the 2014 Release was not relevant to this case at all, as it "regard[ed] a separate case, with different parties[ and] facts, and [did] not control this unrelated matter." Appellant's Memorandum of Law in Support of Response in Opposition to Appellee's Motion for Summary Judgment (Appellant's Response to SJ Motion), 8/30/21, at 2 (unpaginated). On appeal, Appellant has abandoned this argument.

[8] We note Appellee attached only seven selected pages of Attorney LeFevre's deposition testimony to his summary judgment motion, rather than the complete transcript. Meanwhile, it appears Appellant did not attach any deposition transcripts to his reply, and in any event, the certified electronic record did not include any exhibits to Appellant's reply. Accordingly, we rely on the trial court's and parties' quotations of the relevant testimony, the substance of which is not in dispute.

- 6 -

mutual mistake, finding the deposition excerpts he cited were "factually and legally insufficient to void the [R]elease." Trial Ct. Memo., 11/15/21, at 5 n.2. Appellant timely filed a notice of appeal as well as a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

## II. Statement of Questions Involved

Appellant presents two issues for this Court's review:

1. Did the Trial Court apply the wrong standard of review for summary judgment by requiring Appellant[ ] to meet a "clear, precise and convincing evidence" standard rather than a controverted issue of material fact standard?

2. [Has] Appellant[ ] demonstrated that a genuine issue of mutual mistake exists to prevent summary judgment of their malpractice claims against [Appellee] by citing deposition testimony, including from [Sister], who testified that she did not intend to include Appellant['s] malpractice claim against [Appellee] in a general release dated September 11, 2014 settling a different lawsuit, [the Family Lawsuit,] even though she also testified that she did intend to release all attorneys that the parties had dealt with in the family dispute?

Appellants' Brief at 3-4.

## III. Standard of Review

We note the relevant standard of review and guiding principles:

[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact [as to a necessary element of the cause of action or defense] and that the moving party is entitled to judgment as a matter of law.

When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus,

may only grant summary judgment where the right to such judgment is clear and free from all doubt.

On appellate review, then, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

***Allen-Myland, Inc. v. Garmin Int'l, Inc.***, 140 A.3d 677, 682 (Pa. Super. 2016) (paragraph break added), *citing*, *inter alia*, Pa.R.C.P. No. 1035.2(1).

This Court has stated:

Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. . . .

***Coleman v. Wyeth Pharm., Inc.***, 6 A.3d 502, 509 (Pa. Super. 2010) (citation omitted).

## IV. Appellant's Arguments

Appellant does not challenge the trial court's first finding, that the instant claims against Appellee fall under the plain language of the Release.[9]

---

[9] ***See*** Amended Op. at 10-13 (reasoning: (1) Release defines "Released Parties" to include parties' attorneys; (2) Appellant's own complaint averred Appellee was his and RMJP's attorney; and (3) Appellant claimed in both Family Lawsuit and instant malpractice action "that improper conduct deprived him of his interests in [Brother's] shares of RMJP[, and e]ssential to that
*(Footnote Continued Next Page)*

Instead, Appellant challenges the court's rejection of his assertion of a mutual mistake. As his two issues overlap, we address them together.

First, Appellant contends the trial court applied an incorrect standard and burden of proof, when it required him to prove mutual mistake under a "clear, precise, and convincing standard."[10] Appellant's Brief at 17-18, 20. In support, Appellant avers the following: in ruling on summary judgment, a trial court should merely determine whether there is a controverted issue of fact, not whether the evidence submitted is sufficient to prove the particular

_____

litigation was the Operating Agreement and other documents drafted by" Appellee).

[10] Appellee avers this issue is waived for Appellant's failure to include it in his Rule 1925(b) statement. Appellee's Brief at 6-7, *citing* **Lineberger v. Wyeth**, 894 A.2d 141, 148 (Pa. Super. 2006) (failure to include an issue in Rule 1925(b) statement waives that issue for appellate review). We agree that Appellant's Rule 1925(b) statement did not include any claim the trial court applied an incorrect standard or burden of proof. **See** Appellant's Concise Statement of Matters Complained of on Appeal, 12/10/21, at 1-2.

Nevertheless, as Appellant points out, the trial court's November 15, 2021, memorandum, which accompanied the summary judgment order, only briefly addressed in a footnote his claim of mutual mistake. **See** Appellant's Reply Brief at 4; Trial Ct. Memo., 11/15/21, at 5 n.2. This memorandum concluded, in sum: "The [deposition] excerpts submitted by [Appellant] are factually and legally insufficient to void the [R]elease." Trial Ct. Memo., 11/15/21, at 5 n.2. The court did not address the standard of review or burden of proof until its January 28, 2022, Rule 1925(a) opinion, which was issued **after** Appellant filed his Rule 1925(b) statement. **See** Amended Op. at 15. On this record, we decline to find Appellant has waived this issue. **See Commonwealth v. Zheng**, 908 A.2d 285, 288 (Pa. Super. 2006) ("If the reasons for the ruling of the Court are vague, then an appellant is **forced** to file an incomplete Rule 1925(b) statement and there is no violation of Rule 1925(b).").

fact. *Id.* at 18. Furthermore, while "the mere assertion of a mutual mistake, without any evidence, is not sufficient to survive summary judgment," the quantum of evidence "is not the same as that required . . . at trial," and instead, "at this stage[, a] showing of . . . mistake need not be 'clear, convincing and indubitable.'" *Id.* at 19, *citing* **McFadden v. Am. Oil Co.,** 257 A.2d 283, 287 (Pa. Super. 1969).

In his second issue, Appellant alleges the trial court erred in granting summary judgment where the parties presented inconsistent deposition testimony, which in turn established a genuine issue of material fact. Appellant's Brief at 20-21. Appellant maintains that in considering summary judgment, the trial court was to determine only whether there was a genuine issue of fact to be tried, and should not have resolved any conflicts in testimony nor reached the underlying issue of fact. However, the trial court "sided with" Appellee and improperly credited portions of the deposition testimony to conclude there was no mutual mistake. *Id.* at 22. Finally, the court also violated the **Nanty-Glo**[11] rule "by disregarding portions of [the deposition testimony] in favor of other portions of [the] testimony." *Id.* at 23.

---

[11] **Borough of Nanty-Glo v. American Surety Co. of NY**, 163 A. 523 (Pa. 1932).

## V. Waiver of *Nanty-Glo* Claim

We first consider Appellee's assertion that Appellant has waived a *Nanty-Glo* claim for failure to raise it in response to the motion for summary judgment. Appellee's Brief at 8-9, *citing*, *inter alia*, **Lineberger**, 894 A.2d at 149 (**Nanty-Glo** argument was waived because it was not presented in opposition to summary judgment or in Rule 1925(b) statement, and instead raised for the first time on appeal). Appellant concedes he did not cite **Nanty-Glo** by name before the trial court, but claims he nevertheless preserved a "**Nanty-Glo** argument" by arguing "that deposition testimony from [Sister] and [Attorney] LeFevre created a genuine issue of material fact [as to] whether a mutual mistake led to the inclusion of the malpractice action in the" Release. Appellant's Reply Brief at 7-8.

We disagree with Appellant's characterization of the **Nanty-Glo** rule. Instead, the rule

> prohibits summary judgment "where the moving party relies exclusively on oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact except where the moving party supports the motion by using admissions of the opposing party or the opposing party's own witness."

**Lineberger**, 894 A.2d at 149.[12]

---

[12] "However, the nonmoving party may respond to the motion by relying solely on an affidavit to create a genuine issue of material fact, *i.e.*, a credibility determination for the jury." **Gruenwald v. Advanced Computer Applications, Inc.**, 730 A.2d 1004, 1009 (Pa. Super. 1999).

Here, a proper *Nanty-Glo* claim would be that: (1) Appellee, as the moving party, (2) improperly relied exclusively on deposition testimony (3) that was given by Appellee himself or his witnesses (4) to establish the absence of a genuine issue of material fact. *See Lineberger*, 894 A.2d at 149. Appellant, however, presents two entirely different arguments: (1) the trial court violated *Nanty-Glo* "by disregarding portions of testimony" by Sister and Attorney LeFevre "in favor of other portions of their testimony;" and (2) Appellant (the non-moving party) preserved a *Nanty-Glo* claim by arguing that testimony by these same witnesses established a genuine issue of material fact. Appellant's Brief at 23; Appellant's Reply Brief at 8. On this basis, we agree with Appellee that Appellant has not preserved any proper *Nanty-Glo* argument.[13] *See Lineberger*, 894 A.2d at 149. Nevertheless, Appellant has preserved the arguments as outlined above — which again are not *Nanty-Glo* issues.

_____

[13] In the alternative, Appellee argues that consistent with the exception of *Nanty-Glo*, he did not rely on the testimony of his own witness, as Sister was Appellant's witness, where he could not "establish [a] Mutual Mistake defense without her testimony." Appellee's Brief at 9. Appellant refutes this claim, arguing Appellee had attached an affidavit by Sister in support his summary judgment motion. Appellant's Reply Brief at 7 n.1. In light of our foregoing discussion that Appellant has not presented any proper *Nanty-Glo* issue, we need not reach this argument.

## VI. Law on Contracts, Releases & Mutual Mistake

We now consider the relevant authority governing the issues on appeal.

In addressing contract interpretation, this Court has stated:

> When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding. The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used.

**Habjan v. Habjan**, 73 A.3d 630, 640 (Pa. Super. 2013) (citations omitted).

"Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." **Hart v. Arnold**, 884 A.2d 316, 332 (Pa. Super. 2005). "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." **Id.** (citation omitted).

With respect to a release, we note:

> [W]hen construing the effect and scope of a release, the court, as it does with all other contracts, must try to give effect to the intentions of the parties. Yet, the primary source of the court's understanding of the parties' intent must be the document itself. [W]hat a party . . . claims to have intended is not as important as the intent that we glean from a reading of the document itself. The parties' intent at the time of signing as embodied in the ordinary meaning of the words of the document is our primary concern.

"The court will adopt an interpretation that is most reasonable and probable bearing in mind the objects which the parties intended to accomplish through the agreement. . . ." . . .

**Habjan**, 73 A.3d at 641 (citations omitted).

This Court has explained:

The doctrine of mutual mistake of fact serves as a defense to the formation of a contract and occurs when the parties to the contract have "an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party." "A mutual mistake occurs when the written instrument fails to . . . set forth the 'true' agreement" of the parties. "The language of the instrument should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed."

**Hart**, 884 A.2d at 333 (citations omitted). "[S]ince mistakes are the exception rather than the rule, the trier of the facts should examine the evidence with particular care when a party attempts to avoid liability by proving mistake." **Id.** at 333.

A mistake will afford no basis for relief in rescinding a release if the mistake is not mutual. . . . Moreover, to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing.

**Roth v. Old Guard Ins. Co.**, 850 A.2d 651, 653 (Pa. Super. 2004) (citations omitted).

## VII. Analysis

We first note the trial court opined:

[Appellant] failed to show that a mutual mistake existed by clear, precise, and convincing evidence. Presumably, the "mutual mistake" [he] alleges . . . is the inclusion of "attorneys" in the

- 14 -

Release as a "Released Party." [Appellant] presented no evidence (deposition testimony, affidavits, or verified answers to interrogatories) of any mistake in this regard on his part.

Amended. Op. at 15.

In arguing the trial court erred in requiring him to prove a mutual mistake by "clear, precise and convincing" evidence, Appellant cites the 1969 Superior Court decision in **McFadden**, which stated: "[T]he quantum of evidentiary facts which must be adduced to preclude summary judgment is not the same as that required to set aside a release at trial; that is, at this stage his showing of . . . mistake need not be 'clear, convincing and indubitable.'" Appellant's Brief at 19, *citing* **McFadden**, 257 A.2d at 287. However, we note this passage in **McFadden** was not supported by any citation to directly supporting authority, but instead to a comparable opinion: "*Cf.* **Evans v. Marks**[, 218 A.2d 802 (Pa. 1966).]" **McFadden**, 257 A.2d at 289. **Evans**, however, did not involve any summary judgment ruling, which this appeal concerns, but instead an appeal from judgment on the pleadings. **Evans**, 218 A.2d at 804.

On the other hand, in a 2009 decision, the Pennsylvania Supreme Court stated:

[A] non-moving plaintiff bears some evidentiary burden to survive a defense summary judgment motion[:]

> [he] must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that

there is no genuine issue of material fact and the moving
party is entitled to judgment as a matter of law.

*Ertel v. Patriot–News*, . . . 674 A.2d 1038, 1042 ([Pa.] 1996).
*See generally Bill Johnson's Restaurants v. NLRB*, 461 U.S.
731, 745 n.11 . . . (1983) (offering that when evaluating pre-trial
evidence for purposes of the "genuine issue" standard on a motion
for summary judgment, **courts should use the same standard
as is applicable to trial evidence on a motion for a directed
verdict**); *Ertel*, . . . 674 A.2d at 1042 (adopting the federal
standard for evaluating whether plaintiff's evidence is sufficient to
survive a defense motion for summary judgment).

*Ario v. Ingram Micro, Inc.*, 965 A.2d 1194, 1207 n.15 (Pa. 2009) (emphasis added). *Ertel* held that "a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ertel*, 674 A.2d at 1042.

We apply the rule articulated in *Ario*, *via* *Ertel* — that a trial court "should use the same standard as is applicable to trial evidence on a motion for a directed verdict." *See Ario*, 965 A.2d at 1207 n.15; *Ertel*, 674 A.2d at 1042. As stated above, "to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing." *Roth*, 850 A.2d at 653. Accordingly, we find no error in the trial court's opinion that Appellant failed to show a mutual mistake with "clear, precise, and convincing evidence." *See* Amended. Op. at 15.

Next, we consider Appellant's claim that because the parties presented conflicting deposition testimony, a genuine issue of material fact necessarily arose, and thus summary judgment was not proper. The trial court denied

that it made any "credibility determination on any material fact in dispute," and instead, "[t]here were no disputed issues of material fact." Amended Op. at 17. We examine in detail the excerpted testimony that Appellant relied upon, both in his response to the summary judgment motion and on appeal.

First, Sister was posed a hypothetical: if Appellant and Appellee "were in a car accident[,]" would she believe the Release barred Appellant from suing Appellee for personal injury. Appellant's Brief at 10; Appellant's Response to SJ Motion at 6. Sister replied, "I don't know." *Id.* Next, Sister was asked if she understood whether she or her "companies could be made to pay financial damages in the" malpractice action against Appellee. Appellant's Brief at 11; Appellant's Response to SJ Motion at 6. Sister responded, "I'm under the impression that I have nothing to do with the case with [Appellee]. I don't know." *Id.* Third, Sister was asked if Appellee ever paid her or gave consideration to release the instant malpractice lawsuit. *Id.* She answered, "Absolutely not." *Id.*

We agree with the trial court that none of these exchanges support Appellant's claim that Sister had a mistaken belief as to whether the Release would permit the instant malpractice action. *See Hart*, 884 A.2d at 333. Neither the questions nor Sister's responses relate to her understanding of whether the Release barred this malpractice action. Instead, the exchanges related to other matters.

- 17 -

J-A21032-22

We consider additional excerpts cited by Appellant, which do mention her intent or understanding of the Release. First, Sister was asked if she ever felt like she "needed to release [Appellee] from liability [in] an action separately brought by" Appellant. Appellant's Brief at 10; Appellant's Response to SJ Motion at 5. Sister replied, "It's not for me to say; it's not my case." *Id.* Next, Sister was asked if she requested Appellant's malpractice matter to "be referenced" in the Release. Appellant's Brief at 11; Appellant's Response to SJ Motion at 6. Sister responded, "No," and when asked, "Why not?," the following exchange ensued:

> [Sister:] **It's [Appellant's] case, it's not mine. It's for his benefit, it's not mine.** I wanted to be done with him. I wanted to be separated and never have to discuss anything with him again and be done.
>
> Q. . . . Did you ever believe that you could stop a separate case [Appellant] had against [Appellee] through the [R]elease?
>
> A. **I don't know. [N]othing like this was on my mind.**

*Id.* (emphasis in Appellant's brief & memorandum).

We likewise conclude these exchanges fail to show Sister intended Appellant's malpractice suit to be excepted from the Release. Although Sister was specifically asked whether she believed the Release would bar Appellant's malpractice suit, her response was that she did not know, and that the issue was not "on [her] mind." Appellant's Brief at 11; Appellant's Response to SJ Motion at 6. Contrary to Appellant's insistence, her responses do not

- 18 -

demonstrate a particular and articulated intention that Appellant's malpractice suit not be affected or barred by the Release.

Finally, Appellant cited the deposition testimony of Attorney LeFevre. According to Appellant, Counsel responded, "No," to the questions of whether: (1) he asked Appellant "if he understood that by signing [the Release], he would no longer be able to sue [Sister] or any of the other released parties[;]" and (2) he discussed with Appellant whether he could sue Appellee in the future. Appellant's Brief at 12; Appellant's Response to SJ Motion at 7. Even if true — that Attorney LeFevre did not discuss these issues with Appellant — these statements do not establish that Appellant intended the Release would not bar his malpractice action. Instead, the statements merely show a lack of a particular discussion between Appellant and his attorney.

In light of the foregoing, we find no error or abuse of discretion in the trial court's conclusion that Appellant failed to identify a genuine issue of material fact as to whether he and Sister both mistakenly believed the terms of the Release would not affect his malpractice action. **See Allen-Myland, Inc.**, 140 A.3d at 682. Reviewing the facts of record and reasonable inferences therefrom in the light most favorable to Appellant, as the non-moving party, the most he has shown is his own unilateral mistake in believing the Release would not affect his malpractice action against Appellee. **See id.**

Incorporating our above discussion, we conclude no relief is due on Appellant's contention — that the trial court erred in weighing the competing

J-A21032-22

deposition testimony and then reaching an ultimate factual issue. We note the court did cite a portion of the deposition testimony, in which Sister was asked whether she intended to release Appellee from the separate case brought by Appellant. Amended Op. at 16. Sister answered, "When I signed the release, I thought all attorneys were being released . . . and I understood from reading it and from going through it with my attorney that all attorneys that we had dealt with were released." *Id.* The trial court also noted Attorney LeFevre's deposition testimony that he **had** "explained the provisions of the Release to" Appellant. *Id.* at 17.

Nevertheless, as stated above, the trial court based its ruling on a finding that Appellant failed to present evidence "of any mistake . . . on his part" as to whether the Release would extend to the malpractice action. *See* Amended Op. at 15. The court's reference to the above deposition testimony does not alter our conclusion. For all the foregoing reasons, we affirm the order granting summary judgment in favor of Appellee.

## VIII. Conclusion

We conclude the trial court did not err or abuse its discretion in finding: (1) the plain language of the Release barred the instant claims against Appellee; and (2) Appellant failed to establish a mutual mistake that would overcome Appellee's motion for summary judgment. Accordingly, we affirm the order granting summary judgment in favor of Appellee.

Order affirmed.

- 20 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2022